CALOGERO, Chief Justice.*
1 iThis litigation arises out of a dispute over a 30-acre tract of land located south of New Iberia, Louisiana. We granted this writ to determine whether the court of appeal erred in its decision ordering the cancellation and rescission of the sheriffs tax redemption certificate regarding the property. For the following reasons, and upon finding the court of appeal reached an erroneous result, we reverse.
On September, 4, 2002, Defendant, Ms. Katie Marie Hollier purchased from 96-year old Ms. Willie Mae Waters Barnette, her ownership interest in the disputed tract for the sum of $3,762.00.[1] The sale was then recorded in the Iberia Parish conveyance office on September 17, 2002. About nine months later, on June 30, 2003, Defendant, Mr. Troy Arceneaux, purchased the same property at a tax sale and paid the appropriate unpaid taxes for the years 2002, 2003 and 2004.[2] Mr. Arcen-eaux later testified at trial that he believed he would be acquiring clear and entire ownership of the property by paying one hundred percent (100%) of the delinquent | ¡.property taxes.
On December 13, 2004, Mr. Joseph Sterling Davis, II, for $10 and other consideration, purchased the same 30-acre tract from Mr. Larry James Murdock who had purportedly acquired the property through thirty-year acquisitive prescription. This transfer was by cash sale, notarized by Davis’s attorney, Mr. P. Charles Calahan, and recorded on December 23, 2004. That same day, December 23, 2004, Calahan redeemed the property at the Iberia Parish Sheriffs Office. Neither Calahan nor Mr. Raymond Beinvenue, the Deputy Tax Collector, could say for sure whether Cala-han had, at any time, identified the person for whom he was attempting to redeem the property. Beinvenue admits that he never specifically asked Calahan on whose behalf Calahan was redeeming the property. Additionally, although Beinvenue stated there is a process that is normally followed, he did not follow it in this case because he assumed Calahan was redeeming the property for the tax record owner. In line with his assumption, Beinvenue issued the certificate of redemption to “David Waters Estate c/o Katie Marie Hollier,” the tax record owners. He then mailed a refund check to Arceneaux, who had previously paid the taxes. The check directed to Arceneaux was subsequently returned with a notation “undeliverable.”[3]
*1258 After learning of the ownership dispute between the parties, Plaintiff, Sheriff Sid Hebert, moved to rescind the tax redemption on January 14, 2005, naming Hollier, Arceneaux and Calahan as defendants. Sheriff Hebert claimed that he wanted to rescind the tax redemption deed issued to Calahan “out of an abundance of caution so as not to ‘knowingly, or with reckless disregard, impinge upon anyone’s property | arights without due process of law.’ ”[4] Hollier and Arceneaux, together, then filed an answer denying that Calahan had acted for either of them in redeeming the property on February 10, 2005. Furthermore, Hollier and Arceneaux claimed the property had been improperly redeemed “in the name of someone who had no vested interest in the property as an heir, legatee, creditor or otherwise.” Presumably that pleading was referring to Davis or Mur-dock. Their answer also contained a third-party demand against Murdock and Davis, seeking to have the redemption by Cala-han rescinded.
On April 15, 2005, the trial court rendered a judgment and issued written reasons denying the Sheriffs motion to rescind the tax redemption. That judgment was signed on May 25, 2005. Only Hollier and Arceneaux appealed from the trial court’s denial of the Sheriffs motion to rescind, presumably because they thought that judgment, refusing to rescind the tax redemption, would be detrimental to their interests. The court of appeal reversed the trial court judgment, and found the redemption should be invalidated because Davis did not have a recorded interest in the property at the time Calahan made payment for redemption of the property. The court of appeal, relying on La. R.S. 47:2224, found the redemption certificate issued by the Sheriff was legally flawed because Calahan was not acting on behalf of an “owner, or any person interested personally or as heir, creditor, or otherwise.”
LAW AND DISCUSSION
Davis, the applicant in this case, sought a writ from this court which we granted. Hebert v. Hollier, 06-1077 (La.11/03/06), 940 So.2d 647. He argues the court of appeal erred in reversing the decision of the trial court and holding that the tax redemption was invalid. Further, Davis claims that both lower courts erred in relying on La. R.S. 47:2224, which, he contends, is not applicable to the instant case.
| ¿The issue before this court is simply the legality of the tax redemption, not the ownership of the property in question.[5] The court of appeal’s assessment of this issue was inaccurate. In making its determination, the court of appeal focused on whether Davis was a record title owner on December 23, 2004, the date the property was redeemed. Finding that Davis was not a record title owner on that date, the court of appeal determined that the redemption issued by the Sheriff was legally flawed.[6] Furthermore, the court of appeal *1259 relied on La. R.S. 47:2224, which is not applicable to this situation because that statute addresses property adjudicated to the state.[7]
For purposes of our decision today, whether Davis was or was not a record title owner on December 23, 2004, makes little difference. The tax redemption was valid upon the payment of taxes by anyone for any reason and the consequence of such payment is that it inures to the benefit of the record title owner. In this case, that was Hollier. More precisely stated, a person redeeming property need not have a recorded interest in the property being redeemed; however, when the property is redeemed, the tax sale is cleared from the title of the record owner.
The trial court’s refusal to invalidate the redemption because of its finding that anyone could legally redeem the disputed property, was incorrectly reversed by the | r,court of appeal. Citing prior jurisprudence from this court and other courts, the trial court found that the courts have historically recognized that “any one may, for the advantage of the owner, as negotiorum gestor, make payment for him of the redemption money, even without his knowledge.” State ex rel. Busha’s Heirs v. Register of Conveyances et al., 36 So. 900, 113 La. 93 (La.1904); Bentley v. Cavallier, 46 So. 101, 121 La. 60 (La.1908); and Richards v. Nylka Land Co., 79 So. 208, 143 La. 650 (La.1918); See also Gulf Oil Corp. v. Olivier, 412 F.2d 938 (5th Cir.1969) (husband allowed to redeem property in name of wife without allegation he is acting on her behalf); and Hayes v. Fridge, 101 So. 270, 156 La. 932 (La.1924) (mere possessor as owner, without perfect title was allowed to redeem property). After reviewing the relevant jurisprudence, the trial court opined “the issuance of the Certificate of Tax Redemption in the name of the tax record owner, Hollier, was in the spirit of law and jurisprudence.”
We agree with the decision of the trial court. That decision is in keeping with the relevant statute in this case, La. R.S. 47:2222.[8] La. R.S. 47:2222 addresses redemption of property adjudicated to a tax purchaser and has no requirement that the redeemer have a record title interest in the property before redeeming the *1260 property for the delinquent taxes. To the contrary, the language of La. R.S. 47:2222 is centered around the payment required for the redemption, not the person who is actually redeeming the property by paying the delinquent taxes. An examination of La. R.S. 1^47:2221, including Section 25 of Article VII of the Louisiana Constitution of 1974, yields the same conclusion.[9] These provisions are quite clear as to how payment for redemption is to be made; but they do not specify the person or persons who may redeem property sold at a tax sale to a party other than the state. Finding no such provision by the legislature, we hold there is no prohibition against an interested person, or any person for that matter, making payment for redemption of property sold at a tax sale to a party other than the state; however, the effect of such redemption, inures to the benefit of the tax record owner.
DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the judgment of the trial court denying the Motion to Rescind the Tax Redemption is reinstated.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.
JOHNSON, J., concurs.

 Retired Judge Philip C. Ciaccio, ad hoc, sitting for Traylor, J., recused.

.Ms. Hollier acquired only the approximate ten-percent ownership interest held by Ms. Barnette. At oral arguments, counsel for the respondents indicated that there is an unknown number of heirs who could possibly have rights in or to the disputed property.

. Although the relationship, between Ms. Hol-lier and Mr. Arceneaux is unclear, we do know that Mr. Arceneaux was employed by the same bank as Mr. Don Hollier, the father of Ms. Hollier. The parties admit that Mr. Hollier did run a property search at the bank, which apparently alerted the parties to the ownership interest held by Ms. Barnette.

. This would seem to indicate that Arceneaux, *1258 therefore, never actually received notice of the refund; yet, Arceneaux testified that he called Beinvenue to ask who had redeemed the property. Beinvenue testified that he twice telephoned Calahan to ask for whom he had acted, but Calahan never returned his calls.

. Hebert v. Hollier, 2005-1136 (La.App. 3 Cir. 3/1/06), 925 So.2d 666.

. The ownership of the tract is a separate and distinct issue which is the subject of pending litigation at the lower court level.

. The court of appeal appears to have mistakenly relied on an incorrect date of recordation of the sale between Murdock and Davis. The court of appeal variously noted the date of recordation as being "February 22, 2005” and "February 23, 2004.” After the decision rendered by the court of appeal, Davis’s attorney, Calahan, filed a motion to supplement and correct the record on appeal. The mo *1259 tion stated the correct date of recordation of the act of cash sale between Davis and Mur-dock was December 23, 2004, not February 23, 2005. The corrected act was certified by Clerk of Court, Mr. Michael Thibodeaux. Accordingly, it appears that December 23, 2004 has been accepted as the true date of recordation. The court of appeal apparently chose not to act on the motion, instead denying Davis's application for rehearing. Notwithstanding, we agree with the trial court that the date of recordation of the sale is not germane to the determination of whether the tax redemption was invalid.

. La. R.S. 47:2224 provides, in pertinent part:
"If the owner or any person interested personally or as heir, legatee, creditor or otherwise, in any lots or lands bid in for and adjudicated to the state ...” (emphasis added)

. La. R.S. 47:2222(C) reads as follows:
The payment required for the redemption of immovable property adjudicated to a purchaser for taxes may be made either to the purchaser or to the tax collector making the sale or to his successor in office. Upon payment to the tax collector making the sale, or to his successor in office, the tax collector or his successor in office, as the case may be, shall immediately execute a certificate of redemption of the property sold, in which receipt of the redemption payment shall be acknowledged, and the property shall be declared duly redeemed to the tax debtor; it shall be the further duty of the tax collector, or his successor in office, to deliver the said certificate of redemption to the party redeeming the property and to cause notice of the redemption to be entered on the records of his office. All fees and costs in connection with the issuance of the certificate of redemption shall be paid by the party redeeming.

. La. R.S. 47:2221 reads:
Property sold at a tax sale shall be redeemable in accordance with Section 25 of Article VII of the constitution of 1974. Nothing in this Section shall be construed so as to affect in any way, the principle that as to a tax debtor-owner in possession, prescription does not begin against him and in favor of the tax title purchaser until such tax debtor-owner has been first dispossessed.